Memphis Commercial Appeal Co. *et al. v.* Landis.

(*Nashville,* December Term, 1938.)

Opinion filed April 1, 1939.

JOHN L. EXBY and ERNEST WILLIAMS, both of Memphis, and ALF T. ADAMS, of Nashville, for plaintiff, Landis.

FITZHUGH, MURRAH & FITZHUGH, of Memphis, for defendant, Commercial Appeal.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

In this case the plaintiff, Pauline Landis, brought suit against the Commercial Appeal Company and a photographer employed by it for damages to a fine horse alleged to have resulted from the horse becoming frightened at a flashlight picture taken by said photographer in the line of his duties. There was a judgment for plaintiff below in the sum of $3,000. The Court of Appeals found that the judgment was sustained by the evidence but reversed the judgment for errors in the admission of evidence. Both sides filed petitions for *certiorari*, defendants insisting that they were entitled to a directed verdict in their favor and the plaintiff insisting that no errors were committed by the court below, or at least that no errors occurred during the trial affecting the merits of the case.

The proof shows beyond question that the horse injured was a very fine animal named Lady Tennessee. The mare was about six years old at the time of her injuries, well-bred and registered, had taken many prizes, and was easily of value as large as the verdict.

Pauline Landis was a young woman about seventeen years old at the time her horse was injured, was an accomplished rider, and had participated in many horse shows mounted on this animal and others.

■ ■ There is conflict in the proof as to the precise facts incident to the horse's injury and as to other relevant facts, but a careful examination of the record satisfies us that the plaintiff's theory of the case is not only supported by material evidence but that the decided preponderance of the evidence is in her favor. The motion of defendants, therefore, for a directed verdict was properly overruled.

On the evening of May 27, 1936, Lady Tennessee, ridden by Pauline Landis, was being shown in a horse show at Dyersburg. The animal had been entered in the five-gaited class and at the time of the accident she was being ridden around a show ring very rapidly in a rack.

Plaintiff's proof was that the defendant photographer was stationed at a point from fifteen to thirty feet distant from the path of this horse going around the ring. That when the horse got to a point nearly abreast with the photographer, or abreast with him, the latter attempted to take a flashlight photograph of the horse and rider in action. The plaintiff and several witnesses testified that there was a flash, described by some of them as blinding, and that the mare lunged or jumped, that recovering from the jump she came up on three legs, limped on a few paces further, and was stopped by her rider, who dismounted as soon as she could.

There is no controversy but that the mare broke what is known as the coffin bone in her left forefoot, that she was put in a truck and hauled out of the ring, and will not recover from this injury, but is permanently lame and her value as a show mare is totally destroyed. It is possible that the animal may have some value as a brood mare. That is problematical.

Witnesses introduced for the defendants below tes-

tified that the mare did not jump and go lame at the flash of the camera but that she racked on after the flash, her gait unchanged, for one hundred or more feet further, when she slipped, sustained the injury, and went on three legs. It is, of course, not the province of this court to weigh the testimony but we may pause to say that those witnesses who testified that the mare jumped at the flash and came up lame, according to their testimony, were in an excellent position to observe what took place. One of these witnesses was a judge at the horse show, another was the rider of the horse just behind Lady Tennessee, and there were several others in close proximity testifying to this effect. Some of the statements by defendants' witnesses, claiming to have been close to the point of the accident, are a bit difficult to accept, as the statement that they heard, above all the cheering and noise of the ring, this small bone crack as the mare passed them some distance beyond the point where the photographer was located.

█ It is urged by defendants that it is customary to take pictures at exhibitions like this of horses in action, that the photographer had no reason to suppose that a seasoned show horse like Lady Tennessee would become frightened at a flashlight, and that accordingly the photographer was guilty of no negligence in the premises.

The preponderance of the testimony is that it is not customary to take flashlight photographs of horses in action at a show of this kind. Many witnesses who have been in the habit of attending horse shows from Madison Square Garden and Louisville down to the country fairs testified that they never saw such a thing done. They said that it was common to take such pictures of the winners, perhaps other horses, after the show was over,

when the horses were at rest, when the rider was expecting the flash and prepared to control the animal. Some evidence was introduced by the defendant indicating that a few pictures had been taken of horses in action at the Memphis show, at Houston, Texas, and possible one or two small fairs. As stated above, however, the weight of the proof is that flashlights are not taken of performing horses in Nashville, Louisville, and other shows in this section, and the proof does not indicate that there is any such custom at Memphis. There is no proof that any flashlight picture had ever been taken of Lady Tennessee. and Pauline Landis testified that she never saw a flashlight picture taken of any horse performing in the show ring, either ridden by her or another.

The proof, therefore, falls far short of showing that there was anything like a custom of taking flashlight photographs of performing horses in a show ring. A good show horse is always necessarily a spirited animal, is keyed up while in the ring, and setting off a flashlight under such circumstances in the immediate vicinity of such an animal will naturally frighten it and make it lunge or jump, just as men and women are affected in the same way.

If there were any such custom as is urged by the defendant, this court could not sanction it or say that it was the less negligent and hazardous because sometimes or frequently engaged in by newspaper photographers. These gentlemen are commonly more enterprising than discreet.

Another argument for the defendants is that it is conjectural to refer the mare's injuries to a jump at the flashlight rather than to a slip or sprain at the point

where defendants' witnesses say she was injured. It is contended that the animal might have been injured at either time or either place.

The rule here sought to be invoked by the defendants is not applicable. If this mare was injured as plaintiff's witnesses claim, she could not have been injured as defendants' witnesses claim. The two theories are inconsistent. The jury was not given a choice as between two theories equally plausible on proven facts. The basis of one theory or the basis of the other had to be rejected and the jury rejected the predicate of defendants' theory.

■ The defendants make another argument to the effect that the photograph introduced by them, the taking of which is the foundation of this suit, does not show the mare jumping or lunging, and it is then insisted that plaintiff's proof contradicts physical facts shown by the photograph and such proof must therefore be rejected.

We fail to follow this argument at all. Of course the photograph did not show any action. If it did show movement, there would have been no picture, only a blur. The photographer himself testified that this was a high-speed camera so constructed as to eliminate motion. The jump or lunge of the mare would only have appeared on the negative if the reaction of the mare had been faster than the speed of light, which we cannot be asked to believe.

As heretofore stated, the plaintiff and the defendants both filed petitions for *certiorari*. From what we have said it is obvious that the defendants' assignment of error which challenges the sufficiency of evidence to support the jury's verdict is not well taken. Other questions raised by defendants' assignments of error have

been satisfactorily disposed of by the Court of Appeals and defendants' petition for *certiorari* is denied accordingly.

The Court of Appeals reversed the judgment herein and remanded the case for a new trial on account of errors of the circuit judge with reference to the admission of evidence. We have carefully considered this evidence in connection with the other proof in the case, and with all due respect, are unable to see how the admission of such proof could have had any influence with the jury in arriving at their verdict. The petition for *certiorari* filed by the plaintiff was accordingly granted.

█ The first ground for reversal of the judgment upon which the Court of Appeals based its action was the admission of a statement by the witness Bradshaw that a certain show mare known as Betsy Thomason sold for $16,500. Bradshaw was a horseman in charge of certain stables located near Memphis. He was introduced by defendants apparently for the purpose of showing that it was safe to take flashlight photographs of horses of this kind while in action. He testified as to his experience with horses and in regard to fine horses owned by the stables he worked for and about other fine horses coming under his observation. Among other animals mentioned by him was this mare Betsy Thomason. Upon cross-examination, Bradshaw was asked by counsel what this mare sold for and he replied that she sold for $16,500.

The foregoing question and answer was objected to but was admitted by the court evidently upon the idea, founded on a statement by plaintiff's counsel, that a proper comparison would later be brought out between Betsy Thomason and Lady Tennessee. No such comparison, however, was developed—no proof of similarity between

the two mares except that Bradshaw indicated that he regarded Betsy Thomason the better animal.

This proof so brought in was inadmissible. That it did not influence the jury seems to be demonstrated by the verdict of $3,000. There was abundance of proof showing that Lady Tennessee was worth $3,000 and much more; that her value as a show animal had been destroyed; and that the only value remaining to her was that of a brood mare if she proved fertile. It cannot then be successfully contended that the evidence as to Betsy Thomason's value was considered by the jury in arriving at the value of Lady Tennessee.

▇ It is proper to say before passing from the question of the value of the injured animal that the amount of the verdict rendered is fully justified by the evidence and we see no occasion for interfering therewith. It is true that Lady Tennessee was bought by the father of plaintiff for $1,000 when the mare was between three and four years old. She was injured some two years later. She demonstrated her value as a show horse after her purchase by Landis and the testimony of defendants' witness Bradshaw and others is that a show horse is at its peak at six years of age.

▇ The other assignment of error upon which the Court of Appeals based its reversal of the judgment below was the action of the trial judge in permitting the photographer who took this picture to be interrogated as to when he first heard it claimed that Lady Tennessee was injured as the result of fright at the flashlight.

It appears that this case was tried twice in the circuit court and that on the first trial this witness was asked when he first heard of the claim that the Landis

horse was injured as above. He answered that he did not hear of this until the suit was brought.

Upon cross-examination in the last trial, this witness was asked the same question and over objections was permitted to answer "When I read it in the State Gazette." The State Gazette is a paper published at Dyersburg and we take it contained some notice of this accident on the next day after it happened.

In ruling on the objection to this question the circuit judge said, "You may ask him if he ever heard it claimed that." There was no effort to prove the contents of any article in the State Gazette.

It is very earnestly insisted that the foregoing was an effort on the part of plaintiff's counsel to get before the jury the idea that the Dyersburg paper had printed a story to the effect that Lady Tennessee was injured in consequence of this photographer taking the flashlight picture and that this matter was highly prejudicial to the defendants.

We think counsel emphasize this incident far too much. The contents of the news story was not brought out even indirectly further than to show that the story related that a claim of this kind had been made. There was no suggestion that the news story reported, as a matter of fact, that the mare had been injured in this way. There is no suggestion that such a claim had been made by any person other than the owner of the animal. It had been otherwise made plainly apparent to the jury that the owner of Lady Tennessee and others had from the start claimed Lady Tennessee took fright at the flashlight and hurt herself. How the jury could have been influenced by evidence that the newspaper reported that such claim had been made, we do not see.

■ In addition to the foregoing, it was permissible, of course, for the plaintiff on cross-examination of defendants' witness to endeavor to impeach the latter by contradiction between testimony given on the last trial and testimony given on the first trial. If this was done in good faith, within reasonable limitations, it was not objectionable. We do not discover any attempt on the part of plaintiff's counsel in this connection to get before the jury the contents of the story in the Dyersburg paper.

For the reasons stated, the judgment of Court of Appeals will be reversed and the judgment of the circuit court affirmed.