WHITE *v.* STATE.

(*Knoxville,* September Term, 1951).

Opinion filed June 7, 1952.

D<small>ANNEL</small> & F<small>OWLER</small>, of Loudon, for plaintiff in error.

N<small>AT</small> T<small>IPTON</small>, Assistant Attorney General, for the State.

M<small>R</small>. J<small>USTICE</small> T<small>OMLINSON</small> delivered the opinion of the Court.

White, plaintiff-in-error here, shot and killed two "coon dogs" belonging to the prosecutor, and was indicted for this. The indictment charged him with wilfully, wantonly and knowingly killing "the domestic animals, to-wit: two coon dogs, * * * contrary to the forms of statute * * *". This appeal resulted from his conviction with a fine of $25.

The statute involved is Code Section 10865 making it a misdemeanor to wilfully, wantonly and knowingly kill "the domestic animal of another, of any value". One question made by the assignments of error is whether a dog is a "domestic animal" within the meaning of this statute.

■ It is commonly known that a dog is an animal which man owns as a pet or for substantially valuable uses in many ways, and that many dogs of various breeds are bought and sold for money, frequently for a quite substantial sum.

■ It is obvious that Code Section 10865 making it a misdemeanor to wilfully, wantonly and knowingly kill another's domestic animal "of any value" is a statute which was enacted for the purpose, among others, of protecting useful and valuable property. Since dogs, generally speaking, are useful and valuable for one purpose or another, and are kept on the premises of people, it seems illogical to conclude that a dog is not to be considered a "domestic animal" within the meaning of Code Section 10865, or, to express it in the language of this Court in *State* v. *Brown,* 68 Tenn. 53, 55: "If it be the purpose of the criminal law to protect the property of the citizen in that which is useful and valuable, as well as to punish crime, we can scarcely characterize a doctrine as otherwise than simply arbitrary and without sound reason, which would exclude from the protection of the law an animal which, in its varied species, is possessed of so many elements of value and utility to the human family."

The Attorney General's brief mentions the fact that this statute carried as Code Section 10865, as originally enacted, made it a misdemeanor to wantonly, etc., kill a "beast" of value. See *State* v. *Pearce,* 7 Tenn. 66. In

construing the statute as thus originally drawn, this Court in *State* v. *Phillips,* 1 Tenn. Cas. 34, held that a dog is not a "beast" within the meaning of that statute. It was of the opinion that in the use of the word "beast" the legislature had in mind only those domestic animals in which the owner had by common law an absolute property, and that at common law a dog was not such an animal.

As pointed out by the attorney general, the codifiers of our 1932 Code substituted the words "domestic animal" for the original word "beast". Of course, it was for some purpose that this substitution was made. It is reasonable to conclude, as stated by the attorney general, that the purpose was to remove the limitation placed on the effect of the statute by the holding in *State* v. *Phillips,* supra, and to enlarge that statute so as to embrace within its terms any kind of a domestic animal which had a monetary value.

In the text of 3 C.J.S., Animals, Sec. 3, page 1086, citing authority in support, it is said that "the trend of modern jurisprudence is to regard dogs as tame domestic animals having value, and to accord them a full and unqualified status as property." In 2 American Jurisprudence, page 693, the statement with supporting authority is that dogs "are now generally considered as *domestic animals,* as much the subject of property or ownership as horses, cattle and sheep". (Emphasis supplied.)

As a matter of common reasoning, this reasoning being supported by the texts mentioned, and by the legislative and judicial history of Code Section 10865, this Court is of the opinion that a dog is included within the intent and meaning of the words "domestic animal" as used in Code Section 10865.

The act made an offense by Code Section 10865 is the killing of a domestic animal "of any value". Implicit in

such provision is the fact that the killing is not an offense unless the domestic animal has some value. The indictment in this case does not expressly allege that the dogs which White killed had any value.

The indictment does, however, import value in that it alleges them to be "coon dogs". It is commonly known that coon dogs are highly regarded by the many who love the sport of hunting coons, and that coon dogs are sold for substantial sums of money. In as much as this is a misdemeanor, this indictment, by thus importing a value to the dogs killed, meets the requirements of law as to the sufficiency of the allegation.

An annotation in 113 A. L. R. 1275, reads, viz. :

"In an indictment under a statute providing for punishment of one who breaks, etc., 'with intent to steal property of any value,' the court held in *Spencer* v. *State,* 1844, 13 Ohio 401, that the words 'goods and chattels' *ex vi termini* imported value, and that an averment that they were of value was unnecessary. The same was held as to the term 'personal property' in *Boose* v. *State,* 1885, 10 Ohio St. 575.

"In *State* v. *Yates,* 1888, 10 Ohio Dec. Reprint 182, 19 Wkly. Law Bul. 150, where, under a statute making 'anything of value' subject to larceny, a dog was a subject of larceny, it was held that an indictment for burglary by breaking and entering with an intent to steal a dog was sufficient."

It is next insisted that the Court erred in not quashing the indictment because of its failure to allege "the manner and means by which the dogs were killed". The commission of the offense does not depend upon the character of weapon used. It was not, therefore, neces-

sary to charge that the killing was done with any particular weapon. *Alexander* v. *State,* 50 Tenn. 475, 480.

Code Section 10865 not only makes it a misdemeanor to wilfully, wantonly and knowingly kill a domestic animal of value, but also provides that the offender shall pay the owner of the animal its value as ascertained by the jury convicting him. This jury, based upon evidence submitted, found that the value of the dogs was $100. Judgment was accordingly entered in favor of the prosecutor. The dogs were killed on White's property while in pursuit of a rabbit or a cat. It is, therefore, insisted that these dogs were violating the law, and trespassing upon the property of defendant. Hence, that the owner of the dogs can recover no damages for the killing.

In making the insistence just stated counsel evidently overlooks the fact that the jury convicted White of wantonly and wilfully killing these dogs. Under that finding the fact that these dogs were trespassing upon the property of White does not bar the owner from a recovery of their value. *Stegner* v. *Craig,* 159 Tenn. 511, 518-519, 19 S. W. (2d) 234.

White's final insistence is that the evidence preponderates against the verdict. He says that he shot these dogs at some point close to his barn because they were killing and, in fact, did kill his cat. His testimony is that he buried this cat a short distance from the scene. The undisputed proof is that the dogs' owner, accompanied by his son, went to White's house within two hours after the dogs were killed. White told them that the dogs had killed his cat but they did not see a dead cat, nor has any one, except White, ever seen the cat. No cat fur was seen in the mouths of the dead dogs.

According to the prosecutor and his son, they were with these dogs on their own property shortly before

they were killed and that, while on their own property, the dogs "jumped" something and chased it onto the neighboring farm of White. Then it was that they heard four or five shots, and upon immediate investigation found the dogs and that they had been shot and killed on White's premises. A witness who does not appear to have any interest in the case testified that he saw a rabbit running from the field of the prosecutor some distance in front of these dogs and the chase continued onto the property of White. Then the shots were heard. If these be the facts, the jury was warranted in returning a verdict of guilty. Whether they are the facts depends upon whether the witnesses for the State told the truth. Their credibility was a matter for jury determination. Nothing else appearing, its determination of that question is conclusive here. Hence, it cannot be held that the evidence preponderates against the verdict.

Let the judgment be affirmed.