IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 12, 2019 Session

## JACK V. DELANY ET AL. v. MARTIN R. KRIGER ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-003221-16     Mary L. Wagner, Judge**

_____

### No. W2018-01229-COA-R3-CV

_____

Owners of a cat filed a wrongful death complaint against the cat's veterinarian and animal hospital. The defendants admitted liability for wrongly placing a feeding tube into the cat's trachea rather than her esophagus, causing the cat to aspirate and die when she was fed through the tube. The trial court found the defendants were not liable because the cat was so ill she likely would not have survived long anyway, and it dismissed the complaint. We reverse the trial court's judgment and remand the case for a determination of damages.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Jack V. DeLany, Memphis, Tennessee, pro se.

Jack V. DeLany, Memphis, Tennessee, for the appellant, Yvonne DeLany.

Edward Usborne Babb, Knoxville, Tennessee, for the appellees, Martin R. Kriger and Carolyn A. McCutcheon.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jack V. DeLany and Yvonne DeLany had a ten-year old cat named Callie. On December 9, 2014, Ms. DeLany brought Callie to Park Avenue Animal Hospital, LLC, because Callie had not eaten in a couple of days and seemed to be "a little slow." Mary Jo Cochran was the veterinarian who usually saw Callie, but she was in surgery when Ms. DeLany arrived with Callie. Carolyn A. McCutcheon was the veterinarian in charge of the animal hospital, and she conducted an examination of Callie shortly after Ms. DeLany arrived. As soon as she removed Callie from the carrier, Dr. McCutcheon determined that Callie was "very ill." Dr. McCutcheon testified:

> She was very depressed. She was in sternal recumbency, meaning she was sitting up on her chest. When I would stand her up, she kind of slinked back down. She was weak. When I lift[ed] her head, she kind of put it back down. Didn't seem to know where she was. Her body had kind of a jelly feeling to it. . . . [She had] [a]n accumulation of fluid under the skin. Her skin, her sclera, her mouth were all yellow. She was jaundice[d], which I pointed out to Ms. DeLany. And she had subnormal temperature, which means it was just a little bit - - it was too low. And when I opened her mouth, she was pretty dehydrated. When I checked her - - pulled her tongue out, she didn't object at all. When I tried to get her to swallow, I couldn't get her to swallow. She had a - - no swallow reflex.

Dr. McCutcheon testified that she told Ms. DeLany that they needed to get some blood work done. By this time, Dr. Cochran was out of surgery and took over as Callie's primary care provider.

Dr. Cochran passed away in August 2017, before this case was tried.[1] Dr. McCutcheon testified about Dr. Cochran's treatment of Callie based on her conversations with Dr. Cochran and Dr. Cochran's notes, which were admitted into evidence. Dr. McCutcheon testified that, according to Dr. Cochran, the treatment plan was to insert an intravenous catheter to begin rehydrating Callie, start her on intravenous antibiotics, and "try to get some nutrition into her." Dr. McCutcheon explained that Callie's jaundiced condition led her and Dr. Cochran to believe something was wrong with Callie's liver. Because Callie had not eaten for a couple of days, she needed proteins and carbohydrates to prevent her liver from shutting down. Callie was not swallowing, and Dr. McCutcheon testified that the only way to provide Callie with nutrition was by using a feeding tube. If she did not receive nutrition through a feeding tube, Dr. McCutcheon

---

[1]Martin R. Kriger, the administrator ad litem of Dr. Cochran's estate, was substituted for Dr. Cochran as a party-defendant.

testified, she would have died within a couple of days because "her liver cells were already starving."

Unfortunately, when Dr. Cochran inserted the feeding tube, she placed it in Callie's trachea rather than in her esophagus, where it should have gone. Dr. Cochran then directed one of the technicians to feed Callie through the tube. Because the tube had been placed into Callie's trachea, the food sent through the tube went into Callie's lungs rather than into her stomach, causing her to aspirate. Dr. McCutcheon testified that a certified technician was on hand and tried to revive Callie, but the life-saving efforts were unsuccessful and Callie died. Dr. McCutcheon explained that "[i]t would have taken less than 30 seconds for her heart to stop."

The DeLanys filed a civil warrant with the general sessions court in Shelby County seeking damages for "the abuse and tortuous wrongful death of Callie," naming Dr. Cochran and Dr. McCutcheon as defendants. The DeLanys sued Dr. McCutcheon in both her individual capacity and doing business as Park Avenue Animal Hospital, LLC. The general sessions court awarded the DeLanys a judgment for $5,000 on July 25, 2016, and the defendants appealed the decision to the Circuit Court for Shelby County.

The parties engaged in discovery and a trial took place on May 31, 2018. The defendants' counsel admitted the defendants' liability during his opening statement when he said that Dr. Cochran misplaced the feeding tube and that Callie died when food was sent down her trachea rather than her esophagus.[2] Defense counsel acknowledged that the issue before the court was the proper calculation of damages. The court agreed, stating: "They don't deny the negligence. They don't deny that the feeding tube was placed inappropriately. The question that I understand we have is damages and whether Dr. McCutcheon should be dismissed as an individual."

Despite the trial court's acknowledgement during the trial of the defendants' liability, the court issued a final judgment in favor of the defendants and dismissed the DeLanys' case. The court first addressed the DeLanys' claims against Dr. McCutcheon in her individual capacity. It determined that Dr. McCutcheon was not liable in her individual capacity, that the circumstances required to pierce the corporate veil were not present in this case, and that all claims against Dr. McCutcheon in her individual capacity should be dismissed. The court then found that the DeLanys had failed to prove causation in fact:

> The Court finds the elements duty, standard of care, and injury or loss, are not disputed in this case. This case turns on the elements of causation[], specifically, causation in fact. "Causation, or cause in fact, means that the

---

[2]In their pretrial brief, the defendants argued that Dr. McCutcheon should not be held liable in her individual capacity and asked that the claims against her in her individual capacity be dismissed.

injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598[-99] (Tenn. 1993) citing *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 543 (Tenn. App. 1981). A plaintiff must prove the element of causation by a preponderance of the evidence, which "dictates that Plaintiffs demonstrate that the negligence *more likely than not* caused the injury." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985).

Tennessee does not recognize a cause of action for "loss of chance." *Id.* at 596. In *Kilpatrick*, the Tennessee Supreme Court held a plaintiff, "who more likely than not, would have suffered the same harm had proper medical treatment been rendered, is entitled to no recovery for the increase in the risk of harm or the loss of a chance of obtaining a more favorable medical result." *Id.* at 603. In other words, a plaintiff must have a better than even chance of surviving or recovering from an underlying condition absent the negligent act. *Id.* at 602.

In the case at hand, a lab on the cat's liver indicated that the cat's liver had a septic abscess which carried a 79% mortality rate under those circumstances. The cat did not have a better than even chance of surviving or recovering from the underlying condition absent the defendant's negligence. *See id.* Thus, because the cat, more likely than not, would have suffered the same harm had proper medical treatment been rendered, Plaintiffs fail to establish causation in fact by a preponderance of the evidence.

The DeLanys appeal the trial court's judgment dismissing their case. They argue that the trial court erred in (1) concluding that they had failed to prove causation in fact and (2) dismissing their claims against Dr. McCutcheon in her individual capacity.

## II. ANALYSIS

On appeal, we apply a presumption of correctness to the trial court's findings of fact, and we will not overturn its findings unless the evidence preponderates against them. TENN. R. APP. P. 13(d); *Randolph v. Eastman Chem. Co.*, 180 S.W.3d 552, 554 (Tenn. Ct. App. 2005). To find that evidence preponderates against a trial court's finding of fact, we must determine that the evidence supports another finding "with greater convincing effect." *C-Wood Lumber Co., Inc. v. Wayne Cnty. Bank*, 233 S.W.3d 263, 272 (Tenn. Ct App. 2007) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). We review a trial court's legal conclusions de novo, giving no deference to the trial court's conclusions of law. *Cullum v. McCool*, 432 S.W.3d 829, 833 (Tenn. 2013); *Randolph*, 180 S.W.3d at 554.

A.  Negligence

To prevail on their negligence claim, the DeLanys were required to prove (1) that the defendants owed the DeLanys a duty of care, (2) that the defendants breached that duty, (3) damages, (4) factual causation, and (5) legal causation.  *Cullum*, 432 S.W.3d at 832 (citing *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996)); *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005).  Whether a defendant owes a plaintiff a duty of care is a question of law.  *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005) (citing *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998)); *Watson v. Payne*, 359 S.W.3d 166, 168 (Tenn. Ct. App. 2011).  Whether factual or legal causation exists in a particular case is a question of fact. *King v. Anderson Cnty.*, 419 S.W.3d 232, 245 (Tenn. 2013); *Hale*, 166 S.W.3d at 718; *Crutchfield v. State*, No. M2015-01199-COA-R3-CV, 2016 WL 1601309, at *6 (Tenn. Ct. App. Apr. 18, 2016).

Factual causation, which is also known as "cause in fact" or "actual cause," "refers to the 'cause and effect relationship between the tortious conduct and the injury.'"  *King*, 419 S.W.3d at 246 (quoting *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993)) (further citation omitted).  A plaintiff must prove that "'the injury or harm would not have occurred 'but-for' the defendant's negligent conduct.'"  *Id.* (quoting *Kilpatrick*, 868 S.W.2d at 598).

Proximate cause, in contrast, "focuses upon 'whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred.'" *Id.* (quoting *Kilpatrick*, 868 S.W.2d at 598).

> "Proximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct.'"

*Id.* (quoting *Hale*, 166 S.W.3d at 719).  As the *King* Court wrote, "'[p]roof of negligence without proof of causation is nothing.'"  *Id.* at 247 (quoting *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 181 (Tenn. 1992)).

The trial court found that the DeLanys established the negligence elements of duty, standard of care, and injury or loss, which the defendants do not dispute.  The court found, however, that the DeLanys did not prove causation in fact by a preponderance of the evidence.  We disagree.  The evidence was undisputed that Dr. Cochran placed the feeding tube into Callie's trachea and that she should have placed it into the cat's esophagus.  Further, the evidence was undisputed that Callie died as a result of being fed through the tube that was improperly placed in her trachea, causing her to aspirate and her heart to stop.  The record includes the parties' discovery responses, and in response to

the DeLanys' requests for admissions, Dr. McCutcheon admitted that "Callie died as a result of food being injected through the feeding tube into her lungs." She also admitted that Dr. Cochran "negligently placed the feeding tube into Callie's trachea to the lungs instead of her esophagus and that was the direct and proximate cause" of Callie's death. Contrary to the trial court's finding, the DeLanys established that but-for Dr. Cochran's misplacement of the feeding tube and the technician's subsequent injection of food through the tube, Callie would not have died when she did.[3]

The trial court did not address whether the DeLanys established proximate cause. Based on the record, we conclude that they have proven proximate cause in this case. During Dr. McCutcheon's examination at trial, she testified about how esophageal feeding tubes are placed in a cat's neck:

> A. We give them a little bit of gas anesthesia and mark the tube. All this is written out. But we mark the tube, how much to put in. We put in an endotracheal tube. Pass the peri hemostat down the left side of the throat after it's been surgically prepped. Make an incision over the tip of the hemostat. Pull the tube out of the mouth. Reverse it and send it down the esophagus.
>
> Q. So to do that, you have to make an incision in the cat's neck?
>
> A. Yes.
>
> Q. How large of an incision do you make?
>
> A. About a quarter of an inch.
>
> Q. And when you do that, how do you determine where you put it?
>
> A. One, if you have an endotracheal tube in, the only place for it to go is down the esophagus. You can do suction on the tube. You should get a suction. You can take an x-ray and look and visualize where the tube is placed. You can - - once the cat is more awakened, you can put a little bit of water in the tube to see if the cat coughs or not.

Dr. McCutcheon admitted in her responses to the DeLanys' requests for admissions that Dr. Cochran had an x-ray taken once the tube was inserted to confirm

---

[3]Evidence was introduced that Callie was very ill and had only a twenty-one percent chance of survival if the feeding tube had been inserted properly, but that does not alter the fact that Callie died as a direct result of Dr. Cochran's misplacement of the tube and subsequent injection of food through the tube into Callie's lungs.

that the feeding tube was in the proper location and that the x-ray shows the feeding tube was improperly placed into the trachea rather than into the esophagus. This evidence establishes that the defendants were aware of the problems that could occur if a feeding tube were placed into an animal's trachea rather than its esophagus and that steps were taken in this case to avoid such problems. There is no question that Callie's death was caused by the defendants' misconduct and that her death was a reasonably foreseeable result thereof. *See King*, 419 S.W.3d at 246.

Having concluded that they were unable to establish the defendants' liability, the trial court did not address the DeLanys' damages. Domestic pets are considered private property in this state. *White v. State*, 249 S.W.2d 877, 878 (Tenn. 1952) (citing 3 C.J.S. *Animals* § 3). The law is settled that, under certain circumstances, a pet owner is entitled to recover damages for the wrongful death of his or her pet. *See* Tenn. Code Ann. § 44-17-403 (statutory liability for death of dog or cat); *Birdsong v. Wilkinson*, 13 Tenn. App. 276, 279 (1931) (stating that owner may maintain damages action for willful or reckless killing of pet); *Wheatley v. Harris*, 36 Tenn. (4 Sneed) 468, 469 (1857) (finding that owner of dog may maintain action for dog's death or injury); *cf. Memphis Commercial Appeal Co. v. Landis*, 126 S.W.2d 318, 320-21 (Tenn. 1939) (awarding damages for injury to show horse).

A dog or cat owner is statutorily entitled to recover up to $5,000 in noneconomic damages for "the unlawful and intentional, or negligent, act of another or the animal of another . . . ." Tenn. Code Ann. § 44-17-403(a)(1), (b). However, no award of noneconomic damages is permitted in "an action for professional negligence against a licensed veterinarian." Tenn. Code Ann. § 44-17-403(e). Dr. McCutcheon and Dr. Cochran were both licensed veterinarians, so the DeLanys are unable to recover noneconomic damages in this case.

The DeLanys did not introduce evidence of any economic damages they suffered other than the value of Callie herself. Mr. DeLany testified that he did not pay anything for Callie; she was left outside his office when she was just a kitten, and Mr. DeLany brought her home to raise. Tennessee Rule of Evidence 701(b) permits an owner of property to testify to the value of his or her own property. Mr. DeLany testified that, in his opinion, Callie's fair market value was $5,000 and that he believed Callie could have been sold for that amount. Mr. DeLany described Callie as follows:

> As to damages, Callie was a[n] irreplaceable family pet. She was particularly pretty. The pictures show that. She was particularly intelligent. She responded well to voice commands. She would engage in activities that were not usual for a cat. I had a fishing rod that I would place a - - a toy mouse on the end of it and throw it, and she would go and retrieve it. She would bring it back to me so we could do it again.

Dr. McCutcheon testified that, in her opinion, a healthy cat that has been neutered and vaccinated "will go for about $75." She then stated that a sick cat that may die in a couple of days has a market value of $0.[4] No other evidence was introduced regarding Callie's market value.

The calculation of damages is a question for the fact-finder. *See Watson*, 359 S.W.3d at 168; *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 789 (Tenn. Ct. App. 2010); *Hughes v. Lumbermen's Mut. Cas. Co., Inc.*, 2 S.W.3d 218, 227 (Tenn. Ct. App. 1999). When the parties disagree about the valuation of property, the trial court "may place a value on the property that is within the range of the values presented." *Head v. Head*, No. M2009-01351-COA-R3-CV, 2010 WL 3853291, at *3 (Tenn. Ct. App. Sept. 30, 2010); *see also Cole v. Cole*, No. M2006-00425-COA-R3-CV, 2008 WL 1891436, at *2 (Tenn. Ct. App. Apr. 29, 2008). Because the trial court did not reach the issue of damages, we remand this issue to provide the trial court the opportunity to determine the appropriate amount of economic damages to award the DeLanys for the loss of Callie. Economic damages would include any monetary loss to the DeLanys associated with the loss of their personal property, Callie. Such damages would include, but not be limited to, the medical bills incurred for Callie's treatment and the cost of replacing Callie.

### B. Dr. McCutcheon's Individual Liability

The DeLanys challenge the trial court's ruling that Dr. McCutcheon is not liable in her individual capacity for any negligence by Dr. Cochran or that of the animal hospital. Park Avenue Animal Hospital, LLC, is a limited liability company ("LLC"), and Dr. McCutcheon is its sole member. Tennessee Code Annotated section 48-249-114(a)(1) provides that:

> (A) The debts, obligations and liabilities of an LLC, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the LLC;

> (B) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC; and

---

[4]Mr. DeLany disputed Dr. McCutcheon's characterization of Callie as terminally ill; he testified that, other than refusing to eat and moving a little slowly, she had acted normal the morning that his wife brought her in to the animal hospital. However, Mr. DeLany offered no expert to counter Dr. McCutcheon's opinion.

(C) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts or omissions of any other member, holder, manager, officer, director, employee or other agent of the LLC.

The DeLanys rely on Tenn. Code Ann. § 48-249-1119(a), which addresses professional LLCs. The record does not reveal whether Dr. McCutcheon formed a professional LLC or simply a garden variety LLC, but the provision upon which the DeLanys rely to impose personal liability on Dr. McCutcheon does not advance their argument in any event. The statute the DeLanys cite provides:

> INDIVIDUAL PROFESSIONAL LIABILITY. Each individual who renders professional services as a member, holder of financial rights, director, manager, officer, employee or other agent of a domestic or foreign PLLC is liable for such person's own negligent or wrongful acts or omissions, to the same extent as if the person rendered the services as a sole practitioner. A member, holder of financial rights, director, manager, officer, employee or other agent of a domestic or foreign PLLC is not liable, however, for the conduct of other members, holders of financial rights, directors, managers, officers, employees or agents of the PLLC, unless such person is also at fault.

Tenn. Code Ann. § 48-249-1119(a).

The language of this statute is clear that even if she formed a professional LLC, Dr. McCutcheon is not personally liable for her employees' negligence in the absence of evidence that she, personally, performed negligent or wrongful acts or omissions. The evidence was undisputed that Dr. Cochran improperly placed the feeding tube into Callie's trachea rather than her esophagus and that a technician placed food into the tube, as instructed by Dr. Cochran. The DeLanys introduced no evidence that Dr. McCutcheon contributed in any way to Callie's injury or ultimate demise. Dr. Cochran and the technician were both employees of the LLC, and the DeLanys introduced no evidence that either Dr. Cochran or the technician were improperly trained or improperly hired. Thus, we affirm the trial court's ruling dismissing the DeLanys' claims against Dr. McCutcheon in her individual capacity.

## III. CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, as set forth above. This matter is remanded for a determination of the proper amount of economic damages to award the DeLanys. Costs of this appeal shall be assessed against the appellees, Dr. Carolyn A. McCutcheon, D.V.M., d/b/a Park Avenue Animal Hospital,

LLC, and Martin R. Kriger, administrator ad litem of the Estate of Mary Jo Cochran, D.V.M., deceased, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE